**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| Miles D. May and Bonita A. Blanding May, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | 2:07-cv-00864-CWH |
| | ) | |
| | ) | |
| Michael Derrick Peninger, Billy C. Lee, | ) | |
| Charles Rayl and CSA Trading Group Inc., | ) | |
| Daniel Island Builders, LLC, | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |
| ———————————————————— | ) | |

This matter is before the Court on the defendant Charles Rayl's motions (1) to dismiss the complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and (2) for a stay of discovery and all other proceedings, pursuant to the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. 78u-4(b)(3)(B), or for a protective order to stay discovery pursuant to Rule 26(c), pending a decision on the defendant's motion to dismiss.

## I.    Plaintiff's Allegations

Miles May and Bonita Blanding May (the "plaintiffs") allege that in 2003, Michael Derrick Peninger, Billy C. Lee, CSA Trading Group Inc., and Daniel Island Builders, LLC, acting as stock brokers and investment counselors, approached the plaintiffs in an effort to solicit investments with the defendants and their company. These defendants asked for specific sums of money and in exchange, the defendants agreed to invest the money in securities and various stocks. The plaintiffs allege that the securities purchased by the defendants were not registered with the State of South Carolina or with the Securities and Exchange Commission. The defendants informed the plaintiffs that a portion of their investment had been placed with Daniel

Island Builders, LLC through a partner/joint venturer, Charles Rayl.

On August 20, 2003, the plaintiffs invested $17,720.00 with the defendants.  On September 13, 2003, the plaintiffs invested an additional $8,937.50 with the defendants.  On January 26, 2004, the plaintiffs invested another $15,000.00 with the defendants.  In April of 2005, the defendants approached the plaintiffs to solicit additional investments from them.  The defendants asserted that if the plaintiffs were to invest an additional $600,000.00 with them, the plaintiffs would be guaranteed immediate monthly payments of 1% investment principal payable monthly, plus a sharing of the profits through "interest points"[1] based on trading performance.

The plaintiffs notified the defendants that this potential investment of an additional $600,000.00 would represent nearly the total amount of the retirement funds saved by the plaintiffs and that these funds were maintained by the plaintiffs in SEP type income-tax deferred retirement accounts.  In addition, the plaintiffs advised the defendants that the $600,000.00 investment would include proceeds from the sale of the plaintiffs' South Carolina residence.

In May of 2005, the plaintiffs started to invest the additional money with the defendants. Ultimately, the plaintiffs invested approximately $657,000.00.  Beginning in 2006, the defendants started paying the plaintiffs on a monthly basis.  In 2006, the plaintiffs received $61,000.00 reported interest income from the defendants.  In December of 2006, the defendants approached the plaintiffs with a document they called a "renewal contract."  The defendants had originally advised the plaintiffs that the principal payments made by the plaintiffs would be paid back in full on January 1, 2008.  The "renewal contract" modified that date to January 1, 2009. The plaintiffs allege that the defendants made express statements that in January of 2007, the

---

[1] The formula for said "interest points" was not defined or explained to the plaintiffs.

plaintiffs could anticipate millions of dollars in return from the investments made in natural gas mineral rights in Kansas.

On January 10, 2007, instead of paying the plaintiffs per the agreed upon schedule, the defendants advised the plaintiffs that the January check would be late and further indicated that there would be a large benefit to the plaintiffs within sixty days. The defendants stated that once certain administrative difficulties were resolved, the plaintiffs would be paid per the renewed contract dated December 1, 2006. On January 28, 2007, the defendants issued a check for $5,500.00 to the plaintiffs. In February of 2007, the defendants failed to pay the plaintiffs as per the agreed upon schedule. Rather, the defendants advised the plaintiffs that they would be paid on February 19, 2007. Soon thereafter, the defendants advised the plaintiffs that a check would be issued to the plaintiffs on February 25, 2007. On February 25, 2007, when the plaintiffs went to the defendants' place of business to pick up the check, the office was locked.

On February 26, 2007, the plaintiffs contacted the defendants informing them that they had not been paid per the contract and per the defendants' assurances. The defendants promised the plaintiffs that the funds were in their possession and guaranteed payment by certified check on February 28, 2007. On February 28, 2007, the defendants advised the plaintiffs to call certain attorneys who were said to now be responsible for issuing the checks. When the attorneys were contacted by the plaintiffs, the attorneys acknowledged a problem with the company. The attorneys informed the plaintiffs that no money was currently available, nor did they know when said funds might be available. Despite the demand for payment of not only the monthly stipend but also a return of the principal investment, the defendants have paid no money to the plaintiffs. The plaintiffs assert twelve causes of action against the defendants arising out of the foregoing

circumstances.

## II.    Procedural History

On June 26, 2007, the defendant, Charles Rayl ("Rayl"), moved to dismiss the claims

made by the plaintiffs, Miles D. May and Bonita A. Blanding May, pursuant to Rule 12(b)(6) of

the Federal Rules of Civil Procedure.  Alternatively, Rayl moved to dismiss the plaintiffs' claims

for federal securities fraud , South Carolina securities fraud, common law fraud, civil conspiracy,

and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), pursuant to Rule

12(b)(6) and Rule 9(b) of the Federal Rules of Civil Procedure.  On July 30, 2007, the plaintiffs

responded in opposition to Rayl's motion to dismiss and withdrew their causes of action against

Rayl under the Securities Act of 1933 § 17(a) and under the Securities Exchange Act of 1934 §

15(c).

On January 3, 2008, Rayl moved for a protective order to stay discovery.  On January 11,

2008, Rayl amended his motion for a protective order or stay of discovery and all other

proceedings, pending a decision on his motion to dismiss.  On January 11, 2008, Rayl moved for

an expedited hearing on his motion for protective order.

## III.    Standard for Deciding a 12(b)(6) Motion to Dismiss

When considering a motion to dismiss a complaint for failure to state a claim upon which

relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court

must accept all well-pleaded allegations in the complaint as true and view them in the light most

favorable to the plaintiff.  Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992).

It is well settled that a pleading is sufficient if it contains a "short and plain statement of the

claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Except in certain

specified cases, a complaint is not required to set forth heightened fact pleading of specifics, "but only enough facts to state a claim for relief that is plausible on its face. [Where the plaintiff fails to nudge its] claims across the line from conceivable to plausible, [the] complaint must be dismissed." Bell Atlantic v. Twombly, 127 S.Ct. 1955, 1974 (2007).

The Federal Rules of Civil Procedure require particularized pleadings in specific types of cases, including those alleging fraud. Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). The Fourth Circuit Court of Appeals has held that the rule requires pleading of the time, place, and contents of the false representation, as well as the identity of the person making the representation. Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999).

## IV.    Charles Rayl's Motion to Dismiss

### A.    Count I – Securities Fraud

The plaintiffs allege that the defendants violated Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5, 17 § C.F.R. 240.10b-5, promulgated thereunder, which prohibits making false or misleading statements in connection with the sale of securities. To establish liability under Section 10(b) and Rule 10b-5, a plaintiff must prove that in connection with the purchase or sale of a security: "(1) the defendants made a false statement or omission of material fact (2) with scienter (3) upon which the plaintiffs justifiably relied (4) that proximately caused plaintiff's damages." Register v. Cameron & Barkley Co., 467 F.Supp.2d 519, 532 (D.S.C. 2006) (quoting Longman v. Food Lion, Inc., 197 F.3d 675, 682 (4th Cir. 1999)).

The defendant, Charles Rayl, asserts that the cause of action for securities fraud should

be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because the

plaintiffs have not alleged facts that establish liability under the federal securities laws.

Additionally, Charles Rayl claims that under the Private Securities Litigation Reform Act (the

"PSLRA"), codified at 15 U.S.C. § 78u-4, and Rule 9(b) of the Federal Rules of Civil Procedure

each of these elements must be pled with a higher degree of particularity.  The Fourth Circuit

Court of Appeals summarized the interplay between Federal Rule of Civil Procedure 12(b)(6)

and the PSLRA by stating the following:

> [W]hile the Federal Rules generally allow a court, in ruling on a
> motion to dismiss under Rule 12(b)(6), to take into account *any set
> of facts that could be proved* consistent with the allegations of the
> complaint, even though such facts have not been alleged in the
> complaint, the PSLRA modifies this scheme (1) by requiring a
> plaintiff *to plead facts* to state a claim and (2) by authorizing the
> court to assume that the plaintiff has indeed stated *all* of the facts
> upon which he bases his allegation of a misrepresentation or
> omission.  15 U.S.C. § 78u-4(b)(1).

Teachers' Ret. Sys. of La. v. Hunter, 477 F.3d 162, 172 (4th Cir. 2007)

The PSLRA pleading standard applies to the misrepresentation and scienter elements of

the securities fraud claim.  Id.  "[T]he other elements of a securities fraud claim would be

analyzed under the traditional pleading scheme of Rules 8 and 9."  Id.  Thus, with respect to the

misrepresentation and scienter elements of the securities fraud claim, the Court will apply the

pleading standard created by the PSLRA, and with respect to the justifiable reliance and

proximate cause elements, the Court will apply the general pleading standards of Rule 8 and 9,

as applicable to any fraud claim.[2]

---

[2] Congress only addressed the misrepresentation and scienter elements in 15 U.S.C. §
78u-4(b).

1.    Element One: Material Misrepresentation or Omission

To allege a false statement or omission of material fact under the PSLRA, "'a plaintiff 'must point to a factual statement or omission – that is, one that is demonstrable as being true or false.'"  Ottmann v. Hanger Orthopedic Group, Inc., 353 F.3d 338, 342-43 (4th Cir. 2003) (*quoting* Longman v. Food Lion, Inc., 197 F.3d 675, 682 (4th Cir. 1999)).  When pointing to a factual statement, the plaintiff must allege that the statement is false, but when pointing to an omission, the plaintiff must allege "that the omitted fact renders a public statement misleading." Id. at 343.   In addition, to be actionable, "any statement or omission of fact must be *material*," i.e., there must be "a substantial likelihood that a reasonable purchaser or seller of a security (1) would consider the fact important in deciding whether to buy or sell the security or (2) would have viewed the total mix of information made available to be significantly altered by disclosure of the fact."  Ottmann v. Hanger Orthopedic Group, Inc., 353 F.3d 338, 343 (4th Cir. 2003) (*quoting* Longman v. Food Lion, Inc., 197 F.3d 675, 682-83 (4th Cir. 1999)).   Furthermore, in order to satisfy the heightened requirements for pleading misrepresentations or omissions in a federal securities fraud case subject to the PSLRA, the plaintiffs must identify

> each statement alleged to have been misleading, the reason or
> reasons why the statement is misleading, and, if an allegation
> regarding the statement or omission is made on information and
> belief, the complaint shall state with particularity all facts on
> which that belief is formed.

15 U.S.C. § 78u-4(b)(1).

The plaintiffs allege that the defendants made the following misrepresentations or omissions: (1) the defendants did not inform the plaintiffs of the potential risks of the investments they would be making; (2) the defendants asserted that if the plaintiffs were to

invest $600,000.00 with them, they would be guaranteed immediate monthly payments of 1% of investment principle plus a sharing of the profits through interest points based on trading performance; (3) the defendants advised the plaintiffs that the principal payments made by the plaintiffs would be paid back "in full" on or about January 1, 2009; and (4) in January of 2007, the defendants made an express statement that the plaintiffs could anticipate millions in return from the investments made in natural gas mineral rights in Kansas.  The plaintiffs assert that each of these misrepresentations or omissions was misleading because (1) the plaintiffs' investments with the defendants were very risky; (2) the plaintiffs did not receive the immediate monthly payments of 1% of investment principle plus a sharing of the profits through interest points based on trading performance; (3) the plaintiffs did not receive the full principal payments as promised; and (4) the plaintiffs did not realize a return from the investments made in natural gas mineral rights in Kansas, respectively.  The complaint adequately specifies the statements alleged to have been misleading and the reasons why they were misleading.  Therefore, the complaint satisfies the PSLRA's heightened requirements for pleading misrepresentations or omissions.

        2.        Element Two: Scienter

Scienter is the second element of a securities fraud claim under 10(b) of the Securities and Exchange Act and Rule 10b-5.  The PSLRA imposes additional pleading requirements on plaintiffs in securities fraud actions and heightens the requirements of Rule 9(b) for pleading scienter.[3]  Under the PSLRA, a complaint must, "with respect to each act or omission alleged . .

---

[3] Under Rule 9(b), "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally."  Fed. R. Civ. P. 9(b).

., state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). In alleging scienter, "a plaintiff must allege that the defendant made the misleading statement or omission intentionally or with 'severe recklessness' regarding the danger of deceiving the plaintiff." Teachers' Ret. Sys. of La. v. Hunter, 477 F.3d 162, 184 (4th Cir. 2007). The plaintiffs allege throughout the complaint that the defendants were aware that their actions were misleading the plaintiffs. Furthermore, the plaintiffs assert that the representations were made with a reckless disregard as to the truth or falsity of said representations. Therefore, in the present case, the plaintiffs have alleged facts that together establish a strong inference of scienter.

        3.      Element Three: Justifiable Reliance

The third element of a securities fraud claim under 10(b) of the Securities and Exchange Act and Rule 10b-5 is justifiable reliance. The court may consider the following eight factors, none of which is dispositive, to determine whether the plaintiffs were justified in relying on the defendants material omissions or misstatements:

> (1) the sophistication and expertise of the plaintiff in financial and securities matters;
>
> (2) the existence of long standing business or personal relationships;
>
> (3) access to relevant information;
>
> (4) the existence of a fiduciary relationship;
>
> (5) concealment of the fraud;
>
> (6) the opportunity to detect the fraud;
>
> (7) whether the plaintiff initiated the stock transaction or sought to expedite the transaction; and

(8) the generality or specificity of the misrepresentations.

Banca Cremi, S.A. v. Alex. Brown & Sons, Inc., 132 F.3d 1017, 1028 (4th Cir. 1997) (*citing*

Myers v. Finkle, 950 F.2d 165, 167 (4th Cir. 1991)).  No single factor is dispositive of whether

reliance is justified.  The Court will address the factors most pertinent to the present case, factors

one, two, and four, to determine whether the plaintiffs have sufficiently alleged that they

justifiably relied on the defendants representations.

       The first factor, the sophistication of the investor, "has long been a critical element in

determining whether an investor was entitled to § 10(b) relief."  Banca Cremi, 132 F.3d at 1028.

Furthermore, "[w]hen an investor is an individual, this Court looks to several factors to

determine if the investor is sophisticated, including 'wealth[,] . . . age, education, professional

status, investment experience, and business background."  Id. at 1029 (*quoting* Myers, 950 F.2d

at 168).  In the present case, the plaintiffs allege that they are unsophisticated investors with little

knowledge of securities trading.  Furthermore, the plaintiffs claim that they lacked sufficient

investment experience or acumen to make informed judgments or decisions about the purchase

and sale of securities and that they trusted the defendants and routinely followed the advice and

recommendations of the defendants.  The second factor is the existence of a longstanding

business or personal relationship.  The plaintiffs invested with the defendants in numerous

transactions from 2003 until February 28, 2007, which may be considered a long standing

business relationship.  The fourth factor, whether the defendant owed a fiduciary duty to the

plaintiff, is implicated in this case.  The plaintiffs allege that Charles Rayl was in the employ and

control of CSA and Daniel Island Builders LLC as a duly authorized agent and representative,

and therefore, owed a fiduciary duty to the plaintiffs.  The plaintiffs allegations as to element

three, justifiable reliance, are sufficient to satisfy the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure.

4.      Element Four: Causation

The fourth element of a securities fraud claim under 10(b) of the Securities and Exchange Act and Rule 10b-5 is causation.  The Fourth Circuit Court of Appeals held that "a plaintiff must allege and prove that the defendant's misrepresentations proximately caused the plaintiff's economic loss."  Hillson Partners Ltd. Partnership v. Adage, Inc., 42 F.3d 204, 208 (4th Cir. 1994).  Furthermore, the Fourth Circuit Court of Appeals held that "a plaintiff purporting to allege a securities fraud claim must not only prove loss causation – that the material misrepresentations or omissions alleged actually caused the loss for which the plaintiff seeks damages – but he must also plead it with sufficient specificity to enable the court to evaluate whether the necessary causal link exists."  Teachers' Ret. Sys. of La. v. Hunter, 477 F.3d 162, 186 (4th Cir. 2007).

The complaint in this case outlines a theory of loss causation by identifying that as a direct and proximate result of the acts and conduct of the defendants, the plaintiffs suffered a loss of monthly investment income, speculated dividend income, and a complete loss of their life savings.  The plaintiffs allege that the defendants' material misstatements and omissions caused the plaintiffs to lose money because they relied on the defendants' statements and recommendations in making their investments.  As a result, the plaintiffs allegedly invested approximately $657,000.00 with the defendants but never realized the guaranteed profits.  The plaintiffs plead that their losses were directly caused by the defendants' fraudulent activity.  The plaintiffs' allegations as to element four, causation, are sufficient to satisfy the pleading

requirements of Rule 9(b) of the Federal Rules of Civil Procedure.

5.    Conclusion with Respect to Plaintiffs' Securities Fraud Claim

For the foregoing reasons, the Court finds that the plaintiffs' securities fraud claim meets the enhanced pleading requirements of the PSLRA and Rule 9(b) of the Federal Rules of Civil Procedure.  The defendants' motion to dismiss Count I of the complaint, pursuant to the PSLRA, Rule 9(b) or Rule 12(b)(6) of the Federal Rules of Civil Procedure, is denied.

B.    Count II – Violation of the South Carolina Uniform Securities Act

The plaintiffs allege that the defendants violated the South Carolina securities laws as set forth in §§ 35-1-1200 *et seq*. and §§ 35-1-1490 *et seq*., of the South Carolina Code of Laws.  The 2005 enactment of the South Carolina Uniform Securities Act (the "Securities Act of 2005") rendered §§ 1200 *et seq.* and 1490 *et seq.* obsolete by repealing in its entirety the existing South Carolina Uniform Securities Act found in Title 35 of the South Carolina Code of Laws Annotated.  The Securities Act of 2005 § 35-1-501 rewrote the prior law found at former § 35-1-1210.[4]  The Securities Act of 2005 § 35-1-509 rewrote the prior law found at former § 35-1-1490 through § 35-1-1560.[5]  *See* S.C. Code Ann. § 35-1-509, South Carolina Reporter's Comments.

Section 35-1-501 provides, in pertinent part, that

> [i]t is unlawful for a person, in connection with the offer, sale or purchase of a security, directly or indirectly: (1) to employ a device, scheme, or artifice to defraud; (2) to make an untrue statement of material fact or to omit to state a material fact necessary in order to make the statements made . . . ; or (3) to

---

[4] "This section, with minor grammatical exceptions, is unchanged from prior law found at former Section 35-1-1210."  S.C. Code Ann. § 35-1-501, South Carolina Reporter's Comments.

[5] Subsection (b) of § 35-1-509 is substantially similar to prior law found at former §§ 35-1-1490 and 35-1-1510.  *See* S.C. Code Ann. § 35-1-509, South Carolina Reporter's Comments.

> engage in an act, practice, or course of business that operates or
> would operate as a fraud or deceit upon another person.

The South Carolina Uniform Securities Act of 2005 § 35-1-509 creates a civil cause of action against one who sells a security either (1) in violation of the Act's registration requirements or (2) "by means of an untrue statement of a material fact or omission to state a material fact necessary in order to make the statement made, in light of the circumstances under which it is made, not misleading . . . ." S.C. Code § 35-1-509. Sections 35-1-501 and 35-1-509 apply to any person who offers or sells a security. Section 35-1-509(b) relates to a seller's untrue statement or omission to state a material fact and provides the basis for the defendants' alleged violations.

The Federal Rules of Civil Procedure require particularized pleadings in cases involving violation of the South Carolina Uniform Securities Act. As required by the heightened pleading requirements of Rule 9(b), the allegations of fraud in the complaint are sufficiently specific as to the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentations. The "identity" requirement is shown by the plaintiffs' allegations that Rayl was engaged in the unlicensed sale of securities to the plaintiffs, solicited investments from the plaintiffs in the defendants' company, and acted in concert with each of the other named defendants. The "contents" requirement is satisfied by the plaintiffs' allegations that the defendants falsely asserted that the portion of the plaintiffs investment that was placed with Daniel Island Builders, LLC through a partner/joint venturer, Rayl, was one without risk and would yield millions of dollars in profits. As to the "time" requirement, the complaint states that the plaintiffs invested with the defendants in numerous transactions from 2003 until February 28, 2007. Because the "fraud allegedly occurred over a period of time, Rule 9(b)'s

requirement that the circumstances of fraud to be stated with particularity are less stringently applied." U.S. v. Clarkson, 2006 WL 2726101, *2 (D.S.C. Aug. 2, 2006) (*quoting* Fujisawa Phamaceutical Co., Ltd. v. Kapoor, 814 F.Supp. 720, 726 (N.D.Ill. 1993). Finally, as to the "place" requirement, the plaintiffs assert that Rayl was in the employ and control of CSA and Daniel Island Builders, LLC, as a duly authorized agent and representative, and that those entities were organized and operating under the laws of South Carolina.

The allegations of fraud contained in the complaint have been pled with sufficient particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure and the complaint states a claim upon which relief can be granted as required by Rule 12(b)(6). Therefore, the defendants motion to dismiss Count II of the plaintiffs' cause of action pursuant to Rule 9(b) and Rule 12(b)(6) is denied.

C.      Count III – Breach of Fiduciary Duty

In Count III of the complaint, the plaintiffs allege a cause of action for breach of fiduciary duty. "A confidential or fiduciary relationship exists when one imposes a special confidence in another, so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interest of the one imposing the confidence." Island Car Wash, Inc. v. Norris, 292 S.C. 595, 599 (1987). Furthermore, there is a fiduciary relationship among joint venturers. Future Plastics, Inc. v. Ware Shoals Plastics, Inc., 340 F.Supp. 1376, 1383 (D.S.C. 1972).        In the complaint, the plaintiffs state that they reposed complete confidence and trust in the defendants to handle their money from their two retirement accounts and from the sale of their house in Ithaca, New York, which gave rise to a fiduciary relationship between the plaintiffs and the defendants. Furthermore, the plaintiffs allege that Rayl was employed and

controlled by CSA and Daniel Island Builders, LLC and was a partner/joint venturer.  The

plaintiffs have stated a claim for breach of fiduciary duty which is plausible on its face.

Therefore, the motion to dismiss Count III of the complaint is denied.

      D.      Count IV – Common Law Fraud

      In Count IV of the complaint, the plaintiffs allege a cause of action for fraud.  In South

Carolina, in order to recover in an action for fraud and deceit, based upon misrepresentation, the

plaintiffs' complaint must set forth sufficient facts to show that each of the following elements is

present: (1) a representation; (2) its falsity; (3) its materiality; (4) knowledge of its falsity or a

reckless disregard for its truth or falsity; (5) intent that the plaintiffs act upon the representation;

(6) the hearer's ignorance of the falsity; (7) the hearer's reliance on the truth; (8) the hearer's

right to rely thereon; and (9) the hearer's consequent and proximate injury.  Hendricks v. Hicks,

374 S.C. 616, 620 (Ct. App. 2007).  The elements of fraud must be shown by clear, cogent, and

convincing evidence.  M.B. Kahn Constr. Co. v. South Carolina Nat'l Bank of Charleston, 275

S.C. 381, 384 (1980).

      In the complaint, the plaintiffs allege all nine essential elements to state a cause of action

for fraud.  First, the plaintiffs allege that the defendants participated in the making of

representations to the plaintiffs.  Second, the plaintiffs claim that those representations were

misleading, deceitful, and false.  Third, the plaintiffs state that had they known the truth as to the

misrepresentations, no such investments would have been made with the defendants.  Fourth, the

plaintiffs claim that at the time the statements and representations were made, the defendants

knew or should have known that the statements were false.  Fifth, the plaintiffs allege that it was

reasonably foreseeable to the defendants that the plaintiffs would rely on the statements.  Sixth,

the plaintiffs assert that at the time the negligent misrepresentations and omissions were made, the plaintiffs were ignorant of their falsity. Seventh, the plaintiffs believed the misrepresentations and omissions to be true. Eighth, the plaintiffs allege that they reasonably relied upon all of the statements made by the defendants concerning their investment with the defendants. Finally, the plaintiffs claim that as a proximate cause of the defendants negligent misrepresentation, the plaintiffs were damaged.

As previously discussed, under Rule 9(b) of the Federal Rules of Civil Procedure, a claim of fraud is held to a heightened pleading standard. Furthermore, as discussed in the above section on the South Carolina Uniform Securities Act, the plaintiffs sufficiently pled the time, place and contents of the false representations and the identity of the person making the false representations. Therefore, the defendants' motion to dismiss Count IV of the complaint, pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, is denied.

E.      Count V – Breach of Contract

In Count V of the complaint, the plaintiffs assert a cause of action for breach of contract. In order to recover for breach of contract, the plaintiffs must establish the following three elements: (1) a binding contract entered into by the parties; (2) breach or unjustifiable failure to perform the contract; and (3) damages suffered by the plaintiffs as a direct and proximate cause of the breach. Tidewater Supply Co. v. Industrial Elec. Co., 253 S.C. 483, 485 (1969).

In the complaint, the plaintiffs allege that a contract existed between the plaintiffs and the defendants. The plaintiffs allege that the defendants have breached the obligation and promise that the plaintiffs' investment was secure, safe, and without risk and that the full amount would be returned on or before January 1, 2008, and then January 1, 2009 (after renewal of contract).

Furthermore, the plaintiffs assert that as a proximate result of the defendants' breach of contract, the plaintiffs were injured and damaged.

The plaintiffs have alleged the required elements for breach of contract in their complaint. Therefore, the defendant's motion to dismiss this cause of action, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, is denied.

  F.  Count VI – Unfair or Deceptive Practices

In Count VI of the complaint, the plaintiffs assert a cause of action against the defendants for unfair or deceptive practices. The plaintiffs allege that the defendants' actions constitute unfair or deceptive practices as anticipated by § 39-5-20, *et. seq.*, of the South Carolina Code of Laws. Under the South Carolina Unfair Trade Practices Act ("UTPA"), unfair methods of competition and unfair or deceptive acts or practices are unlawful. *See* S.C. Code § 39-5-10(a). UPTA "should be given liberal construction." Connolly v. People's Life Insurance Co., 294 S.C. 355, 359 (Ct. App. 1988). A cause of action pursuant to UTPA requires the plaintiffs to demonstrate the following: "(1) that the defendant engaged in an unlawful trade practice, (2) that the plaintiff suffered actual, ascertainable damages as a result of the defendant's use of the unlawful trade practice, and (3) that the unlawful trade practice engaged in by the defendant had an adverse impact on the public interest." Havird Oil Co. v. Marathon Oil Co., 149 F.3d 283, 291 (4th Cir. 1998).

"An unfair trade practice has been defined as a practice which offends public policy or which is unethical, immoral, or oppressive." deBondt v. Carlton Motorcars, 342 S.C. 254, 269 (Ct. App. 2000). Under South Carolina law, unfair or deceptive acts have an adverse impact on the public if those acts have the potential for repetition. Haley Nursery vo., Inc. v. Forrest, 381

S.E.2d 906, 908 (S.C. 1989).  The plaintiffs allege that the defendants actions constitute unfair or deceptive practices because they have the potential for repetition and have impacted the public interest.  Also, the plaintiffs claim that they have suffered actual and consequential damages as a result of the defendants' activities.  The plaintiffs have alleged the necessary elements of a claim under UPTA.  Therefore, the defendant's motion to dismiss this cause of action, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, is denied.

      G.      Count VII – Civil Conspiracy

The plaintiffs allege that the defendants are guilty of civil conspiracy.  In South Carolina, to be successful on a claim of civil conspiracy, "the plaintiff must show (1) a combination of two or more persons; (2) for the purpose of injuring the plaintiff; (3) causing the plaintiff special damages."  Robinson v. Metts, 86 F.Supp.2d 557, 562 (D.S.C. 1997).  Furthermore, an overt act that causes special damages must occur.  Lee v. Chesterfield General Hosp., Inc., 289 S.C. 6, 11(1986).  The Fourth Circuit has defined special damages as "damages for losses that are the natural and proximate, but not the necessary, result of the injury."  James v. Pratt & Whitney, 126 Fed. Appx. 607, 613 (4th Cir. 2005).

The plaintiffs allege that the conduct of these defendants, acting in concert, were in furtherance of the common design to harm the plaintiffs and caused special damage to the plaintiffs.  The plaintiffs also assert that as a proximate result of the defendants' conspiracy, the plaintiffs were injured and suffered special damages from the loss of monthly investment income, the loss of speculated dividend income, and a complete loss of their entire life savings.  The plaintiffs have alleged the necessary elements for a civil conspiracy claim.  Therefore, the defendants' motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure

is denied.

      H.      Count VIII – Negligent, Wilful, Wanton, Careless and Grossly Negligent Conduct

      The plaintiffs allege that the defendants were negligent, grossly negligent, and wilful and wanton in advising the plaintiffs.  Each of these causes of action are discussed in turn.

      1.  Negligence

      In order to state a cause of action for negligence, the plaintiffs must allege the following: (1) a duty of due care; (2) a breach of that duty by a negligent act or omission; (3) the defendant's breach was the actual and proximate cause of the plaintiff's injury; and (4) the plaintiff suffered an injury or damages.  Andrade v. Johnson, 356 S.C. 238, 245 (2003).  To establish negligence, the plaintiffs must prove that the defendant failed to exercise due care in some respect.  Sunvillas Homeowners Ass'n, Inc. v. Square D Co., 301 S.C. 330, 333 (1990). Due care is that degree of care which a person of ordinary prudence and reason would exercise under the same circumstances.  Hart v. Doe, 198 S.E.2d 526 (1973).

      In the complaint, the plaintiffs allege that the defendants were negligent by failing to use the degree of care a reasonably prudent person would have used under the circumstances. Furthermore, the plaintiffs allege that as a proximate result of the defendants' negligence, the plaintiffs were economically damaged.  Therefore, the plaintiffs have alleged the necessary elements to state a cause of action for negligence.  As such, the defendants' motion to dismiss this cause of action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is denied.

      2.  Gross Negligence

      Negligence is the failure to exercise due care, while gross negligence is the failure to exercise slight care.  Clyburn v. Sumter County School Dis. No. 17, 451 S.E.2d 885, 887 (1994).

Gross negligence has been defined by the South Carolina Supreme Court as the "intentional, conscious failure to do something which it is incumbent upon one to do or the doing of a thing intentionally that one ought not do."  Richardson v. Hambright, 296 S.C. 504, 374 S.E.2d 296, 298 (1988).  South Carolina courts have recognized "gross negligence" only when the defendant has failed to exercise a slight degree of care.  Kimsey v. City of Myrtle Beach, 109 F.3d 194, 197 (4th Cir. 1997).

In the complaint, the plaintiffs allege that the defendants failed to exercise slight care. The defendants' motion to dismiss this cause of action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is denied.

### 3.  Wilful & Wanton Conduct

"Although 'recklessness', wilfulness', and 'wantonness' are, from a technical standpoint, distinct from 'negligence', the concepts are inextricably connected and interwoven to the extent that 'negligence' in its broadest sense is often said to encompass conduct of the former variety." Stockman v. Marlowe, 271 S.C. 334, 338 (1978).  In Osborn v. United Medical Associates of Medical University of South, the court distinguished gross negligence from willful or wanton behavior by stating "[a]lternatively, willful or wanton behavior, although similar in character to gross negligence, tends to require somewhat of a higher degree of culpability."  278 F.Supp.2d 720, 729 (D.S.C. 2003).  "A tort is characterized as reckless, willful or wanton if it was committed in such a manner or under such circumstances that a person of ordinary reason and prudence would have been conscious of it as an invasion of the plaintiff's rights."  Taylor v. Medenica, 324 S.C. 200, 221 (1996).  Furthermore, "[a] conscious failure to exercise due care constitutes willfulness."  Id.

The plaintiffs have alleged that the defendants were willful and wanton in advising the plaintiffs and failed to use the degree of care a reasonably prudent person would have used under the prevailing circumstances. The defendants' motion to dismiss this cause of action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is denied.

I.      Count IX – RICO

The plaintiffs allege that the defendants are liable to the plaintiffs for a substantive violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). RICO's § 1962(a) prohibits a person from receiving income from a pattern of racketeering activity and then using that income in the operation of an enterprise engaged in commerce. *See* New Beckley Mining Corp. v. International Union, UMW of America, 18 F.3d 1161, 1165 (4th Cir. 1994). To state a claim under § 1962(a), the plaintiffs must allege that (1) a defendant person (2) received income derived from (3) a pattern of racketeering activity (4) and invested the racketeering income or its proceeds (5) in the acquisition of an interest in or the establishment or operation of (6) any enterprise (7) engaged in, or the activities of which affect, interstate or foreign commerce. *See* 18 U.S.C. § 1962(a). Section 1964(c) of RICO provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 . . . may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." Id.

In the complaint, the plaintiffs sufficiently state a claim upon which relief may be granted under RICO in light of the pleading requirements of Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure. The plaintiffs allege that (1) the defendants each constitute a person within the meaning of 18 U.S.C. § 1961(3); (2) the defendants have been, at all times material to the

allegations, engaged in an enterprise as defined in 18 U.S.C. § 1961(4); (3) the defendants,

through said enterprise, have, at all times material to the allegations, engaged in racketeering

activity as defined in 18 U.S.C. § 1961(1)(B); (4) the defendants activities and actions involve

and affect interstate commerce; (5) as a direct and proximate result of the conduct of the

defendants, the plaintiffs have been damaged and they herein seek actual damages, punitive

damages, trebled damages, and costs.  The plaintiffs have sufficiently alleged a cause of action

for violation of RICO.  Therefore, the defendants motion to dismiss Count IX of the complaint is

denied.

        J.        Count X – Accounting

        In Count X, the plaintiffs allege a cause of action for an accounting.  An accounting is

essentially an equitable remedy.  *See* Cox v. Lunsford, 272 S.C. 527 (1979).  "As an equitable

remedy, an accounting is designed to prevent unjust enrichment by disclosing and requiring the

relinquishment of profits received as the result of a breach of a confidential or fiduciary duty."

Rogers v. Salisbury Brick Corp., 299 S.C. 141, 144 (1989).  To state a claim for accounting, the

plaintiffs must allege the absence of an adequate remedy at law and a breach of a fiduciary

relationship.

        As previously discussed, the plaintiffs have alleged that a fiduciary relationship exists

between the plaintiffs and the defendants.  Furthermore, the plaintiffs have alleged that the

fiduciary relationship was breached.  Also, in order to support the cause of action for an

accounting, the plaintiffs allege the following: (1) the defendants are now acting and have acted

in the past, in a fraudulent, oppressive and unfairly prejudicial manner to the plaintiffs; (2) the

defendants have not provided any information concerning the current status of the plaintiff's

investment; (3) the plaintiffs have demanded not only information concerning its investment but also, have demanded repayment of their investment; and (4) the plaintiffs are informed and believe that the defendants are misapplying, wasting, or hiding the money. The plaintiffs sufficiently allege grounds to support a cause of action for accounting. Therefore, the defendants' motion to dismiss Count X of the complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, is denied.

K.      Count XI – Conversion

In Count XI, the plaintiffs allege that the defendants are liable for conversion. "Conversion is a tortious act, and may arise either by wrongful taking of chattel or by some other illegal assumption of ownership, by illegally using or misusing it, or by wrongful detention." Castell v. Stephenson Finance Co., 244 S.C. 45, 135 S.E.2d 311, 313 (1964). To recover in an action for conversion, the plaintiffs must prove: (1) an interest by the plaintiff in the thing converted; (2) the defendants converted the property to their own use; and (3) the use was without the plaintiffs' permission. *See* Crane v. Citicorp. Nat'l Servs., Inc., 313 S.C. 70 (1993); Oxford Finance Companies v. Burgess, 303 S.C. 534 (1991). Money may be the subject of conversion when there is an obligation on the defendant to deliver a specific and identifiable fund to the plaintiff. Richardson's Rests., Inc. v. Nat'l Bank of S.C., 304 S.C. 289, 294 (1991). In the present case, money is the subject of the cause of action for conversion. The plaintiffs have sufficiently alleged a claim for conversion in the complaint by alleging that (1) the defendants converted to their own use, enjoyment and benefit, certain assets which are owned and held in trust for the plaintiffs; (2) the defendants wilfully and wantonly withheld or spent the property to the detriment of the plaintiffs; and (3) the plaintiffs have been damaged by the

conversion of these funds.  The plaintiffs have sufficiently pled a cause of action for conversion.

Therefore, the defendants' motion to dismiss this cause of action, pursuant to Rule 12(b)(6), is

denied.

        L.        Count XII – Injunctive Relief

In Count twelve, the plaintiffs seek to enjoin the defendants from any further expenditure

of the money invested by the plaintiffs.  An injunction is "[a] court order commanding or

preventing an action.  To obtain an injunction, the complainant must show that there is no plain,

adequate, and complete remedy at law and that an irreparable injury will result unless the relief

is granted."  Black's Law Dictionary (8th ed. 2004), injunction.

In order to withstand a motion to dismiss in an action seeking injunctive relief, the

plaintiffs do not have to make a demonstration, but rather only need to make an allegation, that

there is clear and imminent danger of great and irreparable injury.  Green v. Cauthen, 379

F.Supp. 361, 371 (D.S.C. 1974).  The plaintiffs have stated a claim for an injunction by alleging

the following: (1) the plaintiffs are without an adequate remedy at law; (2) the defendants are

being unjustly enriched by their wrongful and intentional conduct; (3) should the defendants

continue to misappropriate these funds or further waste or hide the money, the plaintiffs will

have suffered a loss for which it cannot be made whole.  Therefore, the defendants' motion to

dismiss Count XII of the complaint is denied.

**V.**      **Conclusion**

For the foregoing reasons, the defendant's motion to dismiss the complaint, pursuant to

Rule 12(b)(6) and Rule 9(b) of the Federal Rules of Civil Procedure, is denied.

The pending motions for a protective order and to expedite the hearing on Charles Rayl's

motion for protective order and amended motion for protective order are hereby rendered moot.

**AND IT IS SO ORDERED.**

C. WESTON HOUCK
**C. WESTON HOUCK**
**UNITED STATES DISTRICT JUDGE**

February 22, 2008
Charleston, South Carolina